**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

IMOKAYE HOLDINGS LLC,

    *Plaintiff*,

vs.

M/Y IMOKAYE, Hull No. XSK06539G516, her engines, tackle, equipment, furniture, auxiliary vessels, appurtenances, and necessaries, *in rem*,

and

MARINE CONSULTING, INC., d/b/a RICK OBEY & ASSOCIATES, *in personam*,

    *Defendants*.

_____/

CASE NO. _____

**IN ADMIRALTY**

## **VERIFIED COMPLAINT**

Plaintiff, IMOKAYE HOLDINGS LLC, by and through undersigned counsel, hereby sues the vessel M/Y IMOKAYE, Hull No. XSK06539G516, her engines, tackle, equipment, furniture, auxiliary vessels, appurtenances, and necessaries (the "Vessel"), *in rem*, and MARINE CONSULTING, INC. d/b/a RICK OBEY & ASSOCIATES, a Delaware corporation ("ROAA"), *in personam*, and alleges as follows:

**JURISDICTION AND PARTIES**

1. Plaintiff is a Delaware limited liability company with its registered office at One Commerce Center, 1201 Orange Street #600, Wilmington, DE 19899.

2. Defendant Vessel, together with her engines, tackle, equipment, furniture, auxiliary vessels, appurtenances and necessaries, is a 2016 68' Sunseeker motor yacht (hull identification

1

number XSK06539G516) manufactured in the United Kingdom and, upon information and belief, is currently at anchor at Twin Lights Marina in Highlands, NJ, within the territorial jurisdiction of this Court.

3. Defendant ROAA is a Delaware corporation who markets, brokers, sells and charters new and brokerage used yachts in the State of New Jersey and who made the unilateral decision to bring the Vessel to Highlands, NJ.

4. This is an action within the admiralty jurisdiction of this Court as contemplated by 28 U.S.C § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. In particular, this is an in rem action under Rule C, or alternatively Rule D, of the Supplemental Rules for Admiralty or Maritime Claims, because Plaintiff has a maritime lien against the Vessel for breach of a charter party, and in any event has the right to exclusive possession of the Vessel. Admiralty jurisdiction also exists over Plaintiff's *in personam* claim for breach of a maritime contract against Defendant ROAA.

## GENERAL ALLEGATIONS

*Background Facts*

5. In or around April 21, 2016, Plaintiff and ROAA entered into a hybrid charter-to-purchase agreement that had a dual purpose: first, the agreement was a purchase and sale agreement for the sale of the Vessel from ROAA to the Plaintiff; second, the agreement was a *de facto* charter agreement because ROAA, as the seller and owner of the Vessel, gave Plaintiff exclusive possession of the Vessel for purposes of using and enjoying it, but ROAA retained title to the Vessel while Plaintiff paid down the purchase price. *A copy of the charter-to-purchase agreement is attached as* **Exhibit A**.

6. To induce Plaintiff to commit to purchasing the Vessel at some point in the future, ROAA offered to allow Plaintiff to make periodic payments to ROAA that would entitle Plaintiff to use and enjoy the Vessel and with those same installment payments get a credit towards the purchase of the Vessel.

7. The charter-to-purchase agreement contemplated a total purchase price for the Vessel of $2,010,000. Upon commencement of the charter, Plaintiff made an initial payment of $1,000,000, consisting of a cash payment of $200,000 and an $800,000 payment in the form of a trade-in vessel whose ownership Plaintiff transferred to ROAA. The balance then owed on the Vessel was $1,010,000.

8. From the April 21, 2016 closing date through the present, Plaintiff made numerous installment payments such that the final balance due as of today is approximately $850,000.

9. By making these installment payments, in addition to the significant initial payment, Plaintiff was contractually permitted to use, possess, and enjoy the Vessel.

10. The Parties initially agreed to a charter period of six months, but they subsequently entered into a series of amendments extending the period of the charter.

11. In or around May 2019, the Parties engaged in negotiations for what was supposed to be the sixth amendment to the charter agreement to extend the period of the charter.

12. During the Parties' negotiations of the sixth amendment, without notice or authorization from Plaintiff, ROAA made a charge of $25,000 to Plaintiff's credit card.

13. Then, before the Parties had the opportunity to execute the contemplated sixth amendment, ROAA sent Plaintiff a letter unilaterally declaring Plaintiff to be in default of the charter agreement and demanding Plaintiff make an additional payment of hundreds of thousands of dollars by the next day in order to remedy the purported "breach."

14. Understandably, Plaintiff was not in a position to pay hundreds of thousands of dollars on twenty-four hours' notice, especially after ROAA's unauthorized $25,000 charge on Plaintiff's credit card.

15. Thereafter, on June 19, 2019, ROAA dispatched one of its brokers to take the Vessel from Plaintiff without any warning or notice to Plaintiff.

16. The day after ROAA took the Vessel, Plaintiff received a document from ROAA on its letterhead titled "Repossession Order" and signed by Rick Obey, president of ROAA.  *A copy of the document titled "Repossession Order" is attached as* **Exhibit B**.

17. In the document titled "Repossession Order," Mr. Obey avers: "Being duly sworn herein certifies that Rick Obey & Associates is the legal owner of the below vessel.  Owner entered into a lease agreement with Imokaye Holdings LLC, for the below vessel, which the [sic] Agreement is now in Default."  *See* **Exhibit B**.

18. The document titled "Repossession Order" contains no endorsement from any court or any other person or entity besides ROAA and its president.  *See* **Exhibit B**.

19. Plaintiff has unequivocally offered to pay the outstanding balance of the agreed purchase price of the Vessel, but ROAA has refused to accept the payment and has instead represented to Plaintiff that it intends to sell the Vessel and keep all proceeds in addition to the full value of the payments Plaintiff has already made.

20. To date, Plaintiff has paid ROAA more than $1,600,000 in payments pursuant to the charter-to-purchase agreement.

21. On information and belief, the Vessel is currently worth approximately $1,900,000 on the brokerage market.[1]

---

[1] *See* https://www.yachtworld.com/boats/2016/sunseeker-68-sport-yacht-3249575/?refSource=standard%20listing (last accessed June 30, 2019) (showing a vessel of the same make, model, length and year advertised for $1,899,000).

4

22. Plaintiff remains ready, willing, and able to pay off the entire remaining balance of the purchase price in order to have title to the Vessel transferred to Plaintiff. Plaintiff's desire to immediately pay off the balance of the purchase price with readily available funds has been conveyed to ROAA and its counsel in writing on repeated occasions, but ROAA and its counsel have repeatedly ignored Plaintiff's requests to pay off the balance of the purchase price.

23. Plaintiff is being deprived of its contractual rights to pay off the purchase money loan and to exercise possession and control of the Vessel in respect to which Plaintiff has paid more than $1.6 million since 2016.

*ROAA's Breach of the Charter Agreement*

24. The charter agreement did not contain any time-is-of-the-essence clause or any acceleration clause, nor were such terms ever contemplated by the Parties.

25. Therefore, ROAA's unilateral demand that Plaintiff pay hundreds of thousands of dollars overnight was unjustified by the charter agreement and contravened the parties' years-long course of dealing.

26. Essentially, ROAA attempted to artificially manufacture a breach of the contract by unilaterally imposing new, objectively unreasonable terms in the Parties' agreement and then declaring Plaintiff to be in breach for not complying with the new terms.

27. Plaintiff has not breached the charter agreement; instead, ROAA itself has breached the agreement by depriving Plaintiff of use, possession, and enjoyment of the Vessel without cause.

28. Importantly, the charter agreement did not contain any agreement that ROAA would have the right to unilaterally take possession of the Vessel for an alleged breach of the charter agreement or its payment terms.

29.     Instead, ROAA opted to include a liquidated-damages clause in the charter agreement that dictates ROAA's rights should Plaintiff breach its financial obligations, which in any event did not occur here.[2]

30.     In fact, because the charter agreement contained a liquidated damages clause, any clause purporting to allow ROAA to unilaterally repossess the Vessel would constitute an unconscionable double recovery.

31.     Nonetheless, ROAA is now attempting to do exactly that: retain all funds Plaintiff has already paid toward the Vessel *and also* retain possession of and sell the Vessel.

32.     The Parties never agreed that ROAA could (i) unilaterally terminate the charter agreement, (ii) unilaterally take possession of the Vessel despite Plaintiff having paid for the right to use the Vessel; (iii) unilaterally deprive Plaintiff of the right to finish paying for the ownership of the Vessel and reject Plaintiff's repeated offers to ROAA to immediately pay off the balance of the purchase price with immediately available funds; and (iv) reap such a windfall from the charter agreement.

## COUNT I:  ENFORCEMENT OF MARITIME LIEN

33.     Plaintiff restates and incorporates Paragraphs 1–32 above as if fully set forth herein.

34.     Plaintiff has a maritime lien against the Vessel for breach of a maritime contract.

35.     A charter party is a maritime contract.

36.     An owner's breach of a charter party gives rise to a maritime lien for breach of a maritime contract.

37.     Plaintiff performed its obligations under the charter party by paying ROAA for the use, possession, and enjoyment of the Vessel.

---

[2] Plaintiff reserves the right to challenge the enforceability of the liquidated damages clause.

38. ROAA breached the terms of the charter agreement by, among other things:

   a. Depriving Plaintiff of the use, possession, and enjoyment of the Vessel that Plaintiff paid for the right to have;

   b. Unjustifiably repossessing the Vessel;

   c. Depriving Plaintiff of its right to complete the purchase of the Vessel and rebuffing Plaintiff's repeated efforts to pay off the purchase price in one lump-sum payment with readily available funds; and

   d. Attempting to arrogate to itself a double recovery by keeping all the payments Plaintiff has already made while at the same time seeking to resell the Vessel and retain all the proceeds.

39. As a result of ROAA's breach of the charter party, Plaintiff has incurred damages in an amount no less than $1.6 million.

WHEREFORE, Plaintiff prays that process issue in due form of law according to the rules and practices of this Court in causes of admiralty and maritime jurisdiction against the Vessel and that a warrant be issued for the arrest of the Vessel pursuant to Supplemental Admiralty Rule C; that judgement be entered *in rem* in favor of Plaintiff and against the Vessel in an amount no less than $1.6 million; that Plaintiff's maritime lien be declared superior to any other claims that may be made against the Vessel; that the Vessel be sold at Marshal's auction to enforce Plaintiff's lien; and that Plaintiff have such other and further relief as the law and justice may require.

### COUNT II:  POSSESSORY ACTION

40. Plaintiff restates and incorporates Paragraphs 1–32 above as if fully set forth herein.

41. This Count is brought in the alternative to Count I.

42. By reason of the foregoing, ROAA has improperly deprived Plaintiff of its right to use, possession, and enjoyment of the Vessel.

WHEREFORE, Plaintiff prays that process issue in due form of law according to the rules and practices of this Court in causes of admiralty and maritime jurisdiction against the Vessel and that a warrant be issued for the arrest of the Vessel pursuant to Supplemental Admiralty Rule D; that possession of the Vessel be promptly restored to Plaintiff; that Plaintiff be adjudged entitled to use, possession, and enjoyment of the Vessel; and that Plaintiff have such other and further relief as the law and justice may require.

### COUNT III:  BREACH OF CONTRACT AGAINST ROAA

43. Plaintiff restates and incorporates Paragraphs 1–32 above as if fully set forth herein.

44. ROAA and Plaintiff entered into a charter-to-purchase agreement.

45. Plaintiff performed its obligations under the contract by paying ROAA for the use, possession, and enjoyment of the Vessel.

46. ROAA breached the terms of the charter agreement by:

   a. Depriving Plaintiff of the use, possession, and enjoyment of the Vessel that Plaintiff paid for the right to have;

   b. Unjustifiably repossessing the Vessel;

   c. Depriving Plaintiff of its right to complete the purchase of the Vessel and rebuffing Plaintiff's repeated efforts to pay off the purchase price in one lump-sum payment with readily available funds; and

   d. Attempting to arrogate to itself a double recovery by keeping all the payments Plaintiff has already made while at the same time seeking to resell the Vessel and retain all the proceeds.

47.     As a result of ROAA's breach of the charter-to-purchase agreement, Plaintiff has incurred damages of no less than $1.6 million.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against ROAA in an amount no less than $1.6 million; that Plaintiff be awarded interest, attorneys' fees and costs; and that Plaintiff have such other and further relief as the law and justice may require.

### COUNT IV:  UNJUST ENRICHMENT AGAINST ROAA

48.     Plaintiff restates and incorporates Paragraphs 1–32 above as if fully set forth herein.

49.     This Count is brought in the alternative to Count III.

50.     Plaintiff conferred a benefit on ROAA by paying ROAA more than $1,600,000 for the right to charter the Vessel, the right to use the charter hire as a credit towards the purchase of the Vessel, and the right to have the exclusive opportunity to purchase the Vessel.

51.     By repossessing the Vessel from Plaintiff, ROAA apparently seeks to have the full value of the Vessel as well as the full value of the $1,600,000 Plaintiff paid to both charter the Vessel and maintain the exclusive right to purchase it.

52.     It would be inequitable to Plaintiff for ROAA to retain both the full value of the Vessel and the full value of Plaintiff's payments.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against ROAA in an amount no less than $1.6 million; that Plaintiff be awarded interest, attorneys' fees and costs; and that Plaintiff have such other and further relief as the law and justice may require.

                                        Respectfully submitted,

                                        PALMER BIEZUP & HENDERSON LLP

Dated: July 1, 2019                  By:   /s/ Daniel H. Wooster
                                                 Daniel H. Wooster
                                                 330 Market Street
                                                 Camden, NJ 08102
                                                 (856) 428-7717
                                                 dwooster@pbh.com

                                                 *Counsel for Plaintiff*

Of Counsel:

Blair Brogan, Esq.
Florida Bar No. 95029
Umberto C. Bonavita, Esq.
Florida Bar No. 632791
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
(305) 372-3300
bbrogan@robertallenlaw.com
ubonavita@robertallenlaw.com
litigation@robertallenlaw.com